# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 08-2831

———————

United States of America,

        Plaintiff-Appellee,

    v.

Richard Wayne Lovelace,

        Defendant-Appellant.

\*
\*
\*
\*   Appeal from the United States
\*   District Court for the
\*   District of North Dakota.
\*
\*
\*

———————

Submitted: February 12, 2009
Filed: May 19, 2009

———————

Before LOKEN, Chief Judge, and MELLOY and BENTON, Circuit Judges.

———————

BENTON, Circuit Judge.

Richard Wayne Lovelace pled guilty, by a plea agreement, to being a felon in possession of ammunition. *See* **18 U.S.C. §§ 922(g)(1), 924(a)(2)**. He contends, for the first time on appeal, that the government breached the agreement at sentencing and that the district court relied on an improper sentencing process. The government moved to dismiss this appeal, citing the waiver of appellate rights in the plea agreement. Having jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), this court denies the government's motion, vacates the judgment, and remands for resentencing before a different district judge.

## I.

Police arrested Lovelace, a felon, with seven shotgun shells in his possession and a shotgun nearby. The government charged two counts, one for the ammunition and one for the shotgun. *See* **18 U.S.C. §§ 922(g)(1), 924(a)(2)**. The parties executed a plea agreement under Fed. R. Crim. P. 11(c)(1)(B), which provides that a sentencing "recommendation or request does not bind the court." Under the agreement, Lovelace pled guilty to the ammunition count, and the government dismissed the shotgun count.

Paragraph 13 of the agreement states: "The parties agree that the base offense level under the Sentencing Guidelines for defendant's conduct is: 20 (USSG § 2K2.1(a)(4)(A)." A base offense level of 20 applies if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense." **U.S.S.G. § 2K2.1(a)(4)(A)**. The indictment charged one qualifying felony, a 1989 conviction for attempted burglary, a crime of violence.

The Pre-Sentence Report later concluded that Lovelace had two — not one — qualifying felony convictions, and recommended a base offense level of 24. *See* **U.S.S.G. § 2K2.1(a)(2)**. The second conviction was a controlled substance offense in 2000.

At sentencing, the district court asked the government whether it objected to the PSR's base offense level of 24. The government stated:

> No, your honor.
> If I could just briefly address the base offense level, which is obviously different than what the plea agreement entailed. I would note that that base offense level within the plea agreement, bates [sic] offense level of 20, included within the contemplated base offense level of 20

based upon the attempted burglary that is set forth in the indictment in count one.

And I, I suppose, can take credit for neglecting to recognize the second conviction from the year 1999 or 2000, which was the delivery of a controlled substance, as it wasn't within the investigative reports that our office had received and obviously it then was not included in the original indictment, so I was not aware of it at the time that we entered into the plea agreement and so that is why it was not included in the contemplated plea agreement that was sent over to Mr. Henderson [defense counsel]. But, in reviewing the presentence investigative report, certainly it should have been included, and I think the court's calculation is correct.

Lovelace did not object to the government's statement. The court adopted a base offense level of 24. With a two-level enhancement for obstruction of justice, the advisory Guidelines range was 110 to 137 months. The court sentenced Lovelace to 120 months' imprisonment, the statutory maximum.

II.

The government moved to dismiss this appeal, citing the waiver of appellate rights in the plea agreement.[1]

---

[1]The plea agreement states:

Defendant is aware of the right to appeal provided under Title 18, United States Code, Section 3742(a). Defendant hereby waives this and any right to appeal the Court's entry of judgment against defendant, reserving only the right to appeal from an upward departure from the applicable Guideline range. See USSG § 1B1.1, comment. (n.1) (defines "departure"). Except for a claim of ineffective assistance of counsel, the defendant further waives all rights to contest defendant's conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255. Defendant specifically acknowledges that the Eighth Circuit Court of Appeals has upheld the

"As a general rule, a defendant is allowed to waive appellate rights." *United States v. Andis*, 333 F.3d 886, 889 (8th Cir. 2003) (en banc). The court reviews de novo issues related to plea agreements. *United States v. Cvijanovich*, 556 F.3d 857, 862 (8th Cir. 2009). The issue is whether, in the absence of an objection at the district court, this court will enforce a waiver of appellate rights if the government breaches a plea agreement at sentencing.

Several decisions of this court permit appeals, despite waivers, when the government breaches a plea agreement. *See United States v. Wilkerson*, 179 F.3d 1083, 1084 n.2 (8th Cir. 1999) ("[T]he government concedes that the waiver provision would not bar an appeal if there had been a breach . . . ."); *United States v. Johnson*, 263 Fed. Appx. 544, 545 (8th Cir. 2008) (per curiam) (unpublished) (finding no breach, but stating that "[a]n appeal waiver in a plea agreement does not bar an appeal of a sentence if there is a breach of the agreement."); *United States v. Madison*, 16 Fed. Appx. 555, 557 (8th Cir. 2001) (per curiam) (unpublished) (finding no breach, but stating that "[t]he waiver provision does not bar an appeal of a sentence if there is a breach of the plea agreement . . . ."), *citing Wilkerson*, 179 F.3d at 1084 n.2. These opinions do not state whether the defendant first raised the breach argument below or on appeal. (In *Wilkerson*, however, the court states that the defendant "asked the [district] court to enforce the plea agreement," suggesting the defendant first raised the breach argument with the district court. *See* 179 F.3d at 1085.)

On other occasions, this court dismisses appeals, enforcing appellate waivers, when the government allegedly breached the plea agreement, if the defendant did not first raise the breach argument with the district court. *See United States v. Fairbanks*,

---

enforceability of a provision of this type in United States v. His Law, 85 F.3d 379 (8th Cir. 1996). Therefore, defendant understands that any appeal or other post-conviction relief defendant might seek should be summarily dismissed by the Court in which it is filed.

144 F.3d 586, 586 (8th Cir. 1998) (per curiam) ("Fairbanks argues that he should not be bound by his promise [not to appeal] because the government breached the plea agreement. Because Fairbanks failed to raise the government's alleged breach at sentencing, we decline to address this argument."); *United States v. Wullschleger*, 116 F.3d 481, 481 (8th Cir. 1997) (per curiam) (unpublished) ("Wullschleger agreed in his plea agreement . . . to waive his right to appeal his sentence. We will not consider Wullschleger's argument that he should not be bound by this promise because the government breached the plea agreement, as he failed to raise the alleged breach at sentencing.") (citations omitted). *See also United States v. Cook*, 252 Fed. Appx. 114, 115 (8th Cir. 2008) (per curiam) (unpublished) (enforcing appeal waiver, despite appellant's argument that the government breached the plea agreement, but stating that "if we considered the merits" of the breach argument, no breach occurred).

*Wullschleger*, an unpublished decision, is not precedent. **8th Cir. R. 32.1A**. *Fairbanks* "decline[d] to address" whether the government's action, if actually a breach, would release the defendant from the waiver of appellate rights (either because the court implicitly found no breach of the plea agreement, or because the appellate waiver would be enforced even if a breach occurred).

"This panel is bound by Eighth Circuit precedent, and cannot overrule an earlier decision by another panel." *Passmore v. Astrue*, 533 F.3d 658, 660 (8th Cir. 2008) (quotations and citations omitted). "However, when an issue is not squarely addressed in prior case law, we are not bound by precedent through *stare decisis*." *Id.* at 660-61, *citing* **Brecht v. Abrahamson**, 507 U.S. 619, 630-31 (1993); **Webster v. Fall**, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.").

Since *Fairbanks* does not squarely address the issue presented here, this court now considers whether, in the absence of an objection at the district court, this court

will enforce a waiver of appellate rights if the government breaches a plea agreement at sentencing.

B.

The government asserts that Lovelace's appeal is barred by the appellate waiver, citing *United States v. Andis*, 333 F.3d 886 (8th Cir. 2003) (en banc).[2] There, the court established a three-part test for determining whether appellate waivers in plea agreements will be enforced.

> When reviewing a purported waiver, we must confirm [1] that the appeal falls within the scope of the waiver and [2] that both the waiver and plea agreement were entered into knowingly and voluntarily. Even when these conditions are met, however, [3] we will not enforce a waiver where to do so would result in a miscarriage of justice.

*Id.* at 889-90 (numbers added).

The *Andis* test determines whether an otherwise-valid waiver of appellate rights will be enforced. If the government breaches the plea agreement, however, the plea agreement is no longer enforceable as before against the defendant. **United States v. Yah**, 500 F.3d 698, 704-05 (8th Cir. 2007) (when the government breaches a plea agreement, "the defendant is entitled to specific performance and resentencing by a different judge or the opportunity to withdraw his plea"), *citing* **Santobello v. New York**, 404 U.S. 257, 263 (1971). *See also* **United States v. Hahn**, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc) (per curiam) (adopting a modified version of the *Andis* test); **United States v. Yanez-Rodriguez**, 555 F.3d 931, 939-40 (10th Cir. 2009) (reviewing, outside the modified *Andis* test, defendant's argument, raised for the first

---

[2]The government asserts that no breach occurred. It does not alternatively argue whether the waiver is enforceable in the event of a breach.

-6-

time on appeal, that the appeal waiver is unenforceable because of a government breach of the plea agreement).

The Supreme Court recently held that, when a defendant asserts for the first time on appeal that the government breached a plea agreement, the reviewing court examines the forfeited claim under the plain error test of Fed. R. Crim. P. 52(b). *Puckett v. United States*, 129 S.Ct. 1423, 1428 (2009). *Accord **United States v. Benson***, 836 F.2d 1133, 1135-36 (8th Cir. 1988) (reviewing for plain error defendant's argument, raised for the first time on appeal, that the government breached the plea agreement at sentencing; no waiver of appellate rights was involved). Following *Puckett*, this court holds that when a defendant seeks to avoid an appellate waiver contained in a plea agreement by arguing, for the first time on appeal, that the government breached the plea agreement, this court will review the forfeited claim (and related claims) under the plain error test of Fed. R. Crim. P. 52(b).

Before enforcing a waiver of appellate rights, other circuits consider whether the government breached the agreement, even when the defendant fails to raise the breach with the district court. *See **United States v. Swanberg***, 370 F.3d 622, 627 (6th Cir. 2004) (reviewing circuit case law, and concluding that a circuit court may review for plain error a defendant's claim that the government breached the plea agreement, notwithstanding an appeal waiver, even if the defendant does not raise this argument with the district court); *see also **Yanez-Rodriguez***, 555 F.3d at 939 ("[A] defendant does not waive his right to appeal a claim that the government has breached a plea agreement when he fails to object to the breach before the district court," and "even though Yanez-Rodriguez's plea agreement contained a waiver of the right to appeal his sentence, an appellate waiver is not enforceable if the Government breaches its obligations under the plea agreement") (quotations omitted); ***United States v. Gonzalez***, 16 F.3d 985, 990 (9th Cir. 1993) (permitting defendant to appeal, despite waiver of appellate rights, after accepting defendant's argument, raised for the first time on appeal, that the government breached the plea agreement).

Other circuits have, in effect, adopted similar approaches. *See United States v. Cruz*, 300 Fed. Appx. 686, 688 (11th Cir. 2008) (per curiam) (unpublished) (enforcing waiver of appellate rights on two Guidelines claims, but applying plain error review to the merits of appellant's breach-of-plea-agreement argument, which was not raised with the district court); *United States v. Powell*, 299 Fed. Appx. 220, 221-22 (4th Cir. 2008) (per curiam) (unpublished) (enforcing waiver of appellate rights on the merits of appellant's sentencing claim, but reviewing for plain error the argument, raised first on appeal, that the government breached the plea agreement at sentencing).

## III.

Having found that Lovelace may bring this appeal if he shows plain error under Rule 52(b), this court turns to the merits. Lovelace contends that the government breached the plea agreement by advocating a base offense level of 24. "Issues concerning the interpretation and enforcement of a plea agreement are reviewed de novo." *United States v. Paton*, 535 F.3d 829, 835 (8th Cir. 2008). Because Lovelace did not object at sentencing, this court reviews for plain error. **Fed. R. Crim. P. 52(b)**. *See United States v. Granados*, 168 F.3d 343, 345-46 (8th Cir. 1999) (per curiam) (finding sua sponte, under plain error review, that the government breached a plea agreement).

"[B]efore we can correct an error not raised at trial, 'there must be (1) error, (2) that is plain, and (3) that affects substantial rights.'" *United States v. Keller*, 413 F.3d 706, 710 (8th Cir. 2005), *quoting Johnson v. United States,* 520 U.S. 461, 466-67 (1997). "If all three conditions are met, we may remedy the error only if it 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *Id.*, *quoting Johnson*, 520 U.S. at 467.

A.

When a guilty plea is induced by an agreement, the government must abide by its terms. *See **United States v. E.V.***, 500 F.3d 747, 754 (8th Cir. 2007) (holding that the government breached the plea agreement by arguing that U.S.S.G. § 2D1.1(b) applied when the agreement stated the opposite); ***United States v. Mosley***, 505 F.3d 804, 808-09 (8th Cir. 2007) (finding a breach when the government cited defendant's pre-plea statements when refusing to abide by the plea agreement); ***Granados***, 168 F.3d at 345-46 (when the plea agreement identified a drug quantity for sentencing, the government breached the agreement by not objecting to the higher quantity in the PSR).

When the offense level is part of the inducement or consideration for pleading guilty, the government breaches a plea agreement by advocating a higher offense level than that specified in the agreement. ***United States v. DeWitt***, 366 F.3d 667 (8th Cir. 2004). The *DeWitt* plea agreement stated: "The base offense level is 16." ***Id.*** at 668. The PSR recommended an offense level of 28, citing drug quantities attributed to a co-defendant. ***Id.*** at 669. At sentencing, the government acknowledged the base offense level in the plea agreement, but argued that the agreement did not foreclose parties from offering additional information. ***Id.*** The district court adopted the PSR's base offense level. ***Id.*** Finding a breach, this court held that the base offense level was part of the consideration in the plea agreement. ***Id.*** at 669-70.

Here, in the agreement, the parties agreed that the base offense level was 20. At sentencing, the government stated that the "correct" offense level was 24. As in *DeWitt*, the government advocated a higher base offense level than that specified in the plea agreement. Although the district court was not bound by the base offense level in the plea agreement, it was a bargained-for term of the agreement between the government and Lovelace. **Fed. R. Crim. P. 11(c)(1)(B)**. The government breached

the agreement by advocating a higher level.[3] This error, which is plain, satisfies the first two requirements of the Rule 52(b) plain error test.

B.

Although the government breached the plea agreement, under the third step of the plain error test Lovelace must show that the breach affects his substantial rights. **Fed. R. Crim. P. 52(b)**. Since the rights in the plea agreement relate to sentencing, Lovelace must show that his sentence was affected by the breach. *Puckett*, 129 S.Ct. at 1433 n.4. He must show a "reasonable probability, based on the appellate record as a whole, that but for the error he would have received a more favorable sentence." *United States v. Pirani*, 406 F.3d 543, 552 (8th Cir. 2005) (en banc) (quotations omitted).

The plea agreement here did not bind the district court. **Fed. R. Crim. P. 11(c)(1)(B)**. *See United States v. Norris*, 486 F.3d 1045, 1047 n.1 (8th Cir. 2007) (en banc) (plurality opinion) ("The plea agreement was made in accordance with Fed. R. Crim. P. 11(c)(1)(B), under which a sentencing 'recommendation or request does not bind the court.'"). When accepting the guilty plea, the district court advised Lovelace, as required by Fed. R. Crim. P. 11(c)(3)(B), that the court was not bound by the plea

---

[3]The government cites *United States v. Brown*, 328 F.3d 787 (5th Cir. 2003). On the facts there, the Fifth Circuit concluded that the prosecutor's statements were not "an argument against" a term in the plea agreement. *Id.* at 791. Here, by contrast, the government advocated a position contrary to the plea agreement. "Although the Government has a duty to provide the sentencing court with relevant factual information and to correct misstatements, it may not hide behind this duty to advocate a position that contradicts its promises in a plea agreement." *United States v. Munoz*, 408 F.3d 222, 227 & n.29 (5th Cir. 2005) (footnotes omitted), *quoting Colvin v. Taylor*, 324 F.3d 583, 586 (8th Cir. 2003) ("As an officer of the court, the prosecutor had the duty to convey to the court facts about the case and the defendant as long as the specific terms of the plea agreement were not violated.").

agreement. The court was free to rely on the PSR, which identified the second conviction, raising the base offense level to 24. *See United States v. Gillen*, 449 F.3d 898, 900-02 (8th Cir. 2006) (holding that the district court was free to adopt a higher base offense level than that identified in a Rule 11(c)(1)(B) plea agreement); *United States v. Martinez-Noriega*, 418 F.3d 809, 811 (8th Cir. 2005) (noting that a Rule 11(c)(1)(B) plea agreement does not bind the district court).

Reviewing the record, there is no indication that, but for the government's comments, the district court would not have adopted the base offense level in the PSR. *See United States v. Jensen*, 423 F.3d 851, 855 (8th Cir. 2005) (finding no impact on defendant's substantial rights when, even if the government breached the plea, the defendant "has not demonstrated a reasonable probability that the district court would have imposed a lesser sentence"); *United States v. Keller*, 413 F.3d 706, 710-11 (8th Cir. 2005) (resentencing not required, despite error, since defendant "has not demonstrated a reasonable probability of prejudicial error"). While the government breached the plea agreement by arguing in favor of the higher offense level, the Rule 11(c)(1)(B) plea agreement was not binding on the district court, which was free to adopt the PSR's recommended base offense level.

Accordingly, Lovelace has failed to show by a reasonable probability that the government's breach affects his substantial rights. The breach claim fails the plain error test of Fed. R. Crim. P. 52(b).

IV.

Lovelace also challenges certain comments by the district court at sentencing, which detail the district judge's personal knowledge of Lovelace's criminal history based on previous service as a city prosecutor. Because Lovelace did not object, this court reviews for plain error. **Fed. R. Crim. P. 52(b)**.

A.

"A district court abuses its discretion and imposes an unreasonable sentence when it fails to consider a relevant and significant factor, gives significant weight to an irrelevant or improper factor, or considers the appropriate factors but commits a clear error of judgment in weighing those factors." ***United States v. Miner***, 544 F.3d 930, 932 (8th Cir. 2008).

At sentencing, the parties disputed the significance of a 1987 armed confrontation between Lovelace and Fargo police. Lovelace argued that the episode highlights his need for mental health treatment. In response, the government noted that the PSR indicates Lovelace claimed no history of mental or emotional difficulties, that Lovelace chose not to seek mental health treatment after the 1987 incident, and that Lovelace "needs to be confined" and "is a dangerous person." The district judge stated:

> Now, all I can say is that I think a portrait of this man as it has played out in this sentencing hearing and, frankly, over the course of the many years that I have been aware of this defendant — at the time that 1987 incident occurred I was the sitting prosecutor in the City of West Fargo. All right? I had some knowledge of that case from very early on. All right? And I have had knowledge of the defendant, and I think that there are some things that strike me as somewhat unusual.
>
> I mean, I think that people have memories that are not always as clear as they might be, and judges are no different. Okay? And so, I mean, my recollection of what happened in that 1987 day may not be accurate. Okay? My recollection was is that pretty well everybody sitting around in the places where I was where we talked about that case believe that it was in fact an attempt at suicide that went dreadfully wrong.
>
> On the other hand, everybody that was sitting around that room also believed that the police officers were at very real risk of being shot,

-12-

and, you know, we have forgotten here that there is a peace officer that suffered until the day he died because of that shooting incident, you know. And I'll just tell you that's the truth because that emotionally he was never the same, you know. He felt that he had let down his partners. He felt that the whole thing was poorly handled and that, you know, somebody was hurt who might — they might have been able to avoid it had it been handled differently. He felt that officers might have been killed because he didn't shoot sooner.

And, you know, there was — there was pain enough in that case to go around. All right? And so I guess when I say the officer who shot, who pulled the trigger was never quite the same. I guess it was one who didn't shoot who was the most impacted by it actually. I mean, but there was pain in that incident and not just by the defendant.

Now, if it fact the people closest to the defendant were unable to see that as a sort of a botched suicide attempt that almost ended up as murder, that almost ended up with Mr. Lovelace being dead, I mean then I'm thinking that there were all kinds of people that weren't thinking very clearly because those were all things that I recall being very plainly discussed in the City Prosecutor's office with the officers involved. And, you know, I mean it may be my recollection isn't right but that's how I remember it being.

It's a tough, tough deal, you know. Very difficult situation.

Now, that's not why the defendant is here. Why the defendant is here is because of the incident he's pled to.

B.

Lovelace asserts that the district court abused its discretion at sentencing by relying on an "irrelevant factor," the judge's personal knowledge of the 1987 episode. Lovelace specifically contends that the judge's comments violate the adversarial process of Fed. R. Crim. P. 32.

This court reviews Lovelace's Rule 32 claim for plain error. *See United States v. Barrett*, 552 F.3d 724, 728 (8th Cir. 2009) (reviewing alleged Rule 32 error for

plain error when defendant raised no objection with the district court).  Under plain error review, Lovelace must show (1) error, (2) that is plain, and (3) that affects substantial rights.  **Keller**, 413 F.3d at 710, *citing **Johnson***, 520 U.S. at 466-67.  The fourth step of plain error review requires Lovelace to show that the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings."  ***Id.***, *quoting **Johnson***, 520 U.S. at 467.

1.

Rule 32 imposes no substantive limits on information that a court may consider at sentencing.  "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."  **18 U.S.C. § 3661**.  *See also* **U.S.S.G. § 1B1.4** ("In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law.").

Rule 32 does, however, create a process for parties to present and challenge sentencing information, and for the adjudication of disputes.  In 1975 Congress amended Rule 32 to require advance disclosure to the defendant of material information relevant for sentencing.  **Criminal Procedure Act, Pub. L. No. 94-64, 89 Stat. 370 (1975)**.  Congress emphasized that, by allowing a defendant to respond to information in the PSR, the court would receive more accurate information, allowing it to impose the most appropriate sentence.

> The Committee added language to subdivision (c)(3)(A) that permits a defendant to offer testimony or information to rebut alleged factual inaccuracies in the presentence report.  Since the presentence report is to be used by the court in imposing sentence and since the consequence of

any significant inaccuracy can be very serious to the defendant, the Committee believes that it is essential that the presentence report be completely accurate in every material respect. The Committee's addition to subdivision (c)(3)(A) will help insure the accuracy of information in the presentence report.

**H. R. Rep. No. 94-247**, at 18 (1975), *reprinted in* 1975 U.S.C.C.A.N. 674, 690. *See United States v. Nappi*, 243 F.3d 758, 763 (3d Cir. 2001) ("Rule 32 contains specific requirements that ensure that the defendant is made aware of the evidence to be considered and potentially used against him at sentencing, and is provided an opportunity to comment on its accuracy.").

"Rule 32 frames . . . [sentencing] issues by directing the probation officer to prepare a presentence report addressing all matters germane to the defendant's sentence." **Burns v. United States**, 501 U.S. 129, 134 (1991). The PSR "must . . . identify any factor relevant to . . . the appropriate kind of sentence." **Fed. R. Crim. P. 32(d)(1)(D)(i)**. The PSR must contain "any prior criminal record" and "any circumstances affecting the defendant's behavior that may be helpful in imposing sentence or in correctional treatment." **Fed. R. Crim. P. 32(d)(2)(A)(i)**; **Fed. R. Crim. P. 32(d)(2)(A)(iii)**. Parties may object to, and respond to objections against, the PSR. **Fed. R. Crim. P. 32(f)**. The court "must allow the parties' attorneys to comment on the probation officer's determinations and other matters relating to an appropriate sentence." **Fed. R. Crim. P. 32(i)(1)(C)**. "[F]or good cause," either party may "make a new objection at any time before sentence is imposed." **Fed. R. Crim. P. 32(i)(1)(D)**. The court must rule on disputed portions of the PSR. **Fed. R. Crim. P. 32(i)(3)(B)**. *See generally United States v. Hayes*, 171 F.3d 389, 392-93 (6th Cir. 1999) (discussing "the adversarial scheme created by Rule 32").

A Sixth Circuit decision addressing Rule 32 is instructive here. In *United States v. Hayes*, the district court reviewed victim letters — undisclosed to the defendant — before imposing sentence. *Id*. at 391. At sentencing, the district judge stated:

I didn't bring with me out to the bench but I should have, unfortunately these are in the files of other defendants, but I received a number of letters from people who were in the bank at the time that you robbed it, including tellers and customers, and I just want you to know the effect that this had on those people. Several of those people are in counse[l]ing; they can't sleep at night. They're having nightmares. The teller in particular, when Mr. Herron jumped over the counter with the gun, is in a desp[e]rate situation. I don't think that you understand the consequences of the kind of activities that you've been engaged in.

One woman wrote me that she can't even go to work. She wasn't able to work for six months after this robbery.

Now, you may not take that seriously, sir, but as a judge, I take it very seriously. These people who are doing nothing but their job or just simply doing what they do in life. They go into the bank, just as if your family would go into a bank or into a supermarket or a convenience store and somebody would walk in with a gun, put them to peoples' heads. You may not understand the impact on these people. But I want you to understand what these people feel and how they've reacted.

*Id.* at 391 (quoting district court).

The Sixth Circuit held that, by relying on undisclosed victim letters, the district court committed plain error, requiring reversal under Fed. R. Crim. P. 52(b). *Id.* at 395. "Though Rule 32(b)(6) only expressly deals with the right to review the presentence investigation report, the right to review other information relied on by a court at sentencing is implicit in the adversarial scheme created by Rule 32 and in the requirement of Rule 32(c)(1) that both counsel for the defendant and the government

must be provided 'an opportunity to comment on the probation officer's determination and on other matters related to the appropriate sentence.'" *Id.* at 392.[4]

Here, in addition to the PSR, the district court relied on previously undisclosed information at sentencing: the judge's knowledge of the effect of the 1987 incident on Fargo police officers, facts not included in the PSR. In *Hayes*, the district judge noted that victims "can't sleep" and are "having nightmares." Here, the district judge stated that an officer involved in the 1987 incident "suffered until the day he died" and "emotionally . . . was never the same." Although the source of the undisclosed information differed — victim letters in *Hayes*, the judge's recollection here — the effect was the same. Both district courts erred by relying on information at sentencing that was not presented in advance to the defendant, in accordance with Rule 32. This was error. **Fed. R. Crim. P. 32(d)(1)(D)(i)** (the PSR must contain "any factor relevant to . . . the appropriate kind of sentence"); **Fed. R. Crim. P. 32(e)(2)** (the defendant must receive the PSR at least 35 days before the sentencing hearing); **Fed. R. Crim. P. 32(i)(1)(C)** (The court "must allow the parties' attorneys to comment on the probation officer's determinations and other matters relating to an appropriate sentence.").

2.

The second step of the plain error test requires that the error be "plain." *Keller*, 413 F.3d at 710, *citing Johnson*, 520 U.S. at 466-67. "'Plain' is synonymous with 'clear' or, equivalently, 'obvious.'" *United States v. Olano*, 507 U.S. 725, 734 (1993). A plain error is one that is clear or obvious under current law. *See United*

---

[4]Amendments effective December 1, 2002, changed the internal organization of Rule 32. Under the current version, Section (e)(2), not (b)(6), requires disclosure of the PSR to the defendant in advance of sentencing; section (i)(1)(C), not (c)(1), entitles the parties to comment on the PSR and on other matters related to an appropriate sentence.

*States v. Dunigan*, 555 F.3d 501, 506 (5th Cir. 2009), *petition for cert. filed* (U.S. Apr. 20, 2009) (08-9959) (error must be "clear under existing law"); *Royal Maccabees Life Ins. Co. v. Choren*, 393 F.3d 1175, 1181 (10th Cir. 2005) (error must be "plain or obvious under existing law"); *United States v. Phaneuf*, 91 F.3d 255, 263 (1st Cir. 1996) (plain error is "an obvious and clear error under current law").

Rule 32 existed in its current form at the time of sentencing. Although the facts and circumstances of this case differ, circuit courts have found that a district court's reliance at sentencing on material information not disclosed in advance to a defendant violates the Rule 32 process. *See United States v. Hamad*, 495 F.3d 241, 243-44 (6th Cir. 2007) (confidential letters denouncing defendant); *Nappi*, 243 F.3d at 764 (state court PSI). The error is plain.

3.

The third step of the plain error test requires Lovelace to show a "reasonable probability, based on the appellate record as a whole, that but for the error he would have received a more favorable sentence." *Pirani*, 406 F.3d at 552 (quotations omitted).

Both before and during the sentencing hearing, Lovelace requested a below-Guidelines sentence, arguing that he had never received mental health treatment for the 1987 incident, which occurred when he was 17 and which he characterizes as a suicide attempt. The district court cited the effect — undisclosed to Lovelace — of the incident on police officers, and then sentenced him to 120 months, the statutory maximum. Without advance notice, Lovelace could not contest the district judge's description of the police officer's emotional state. As the district court discussed this issue at some length immediately before imposing sentence, Lovelace has shown a reasonable probability that, but for the Rule 32 error, the district court would have

imposed a more favorable sentence. *Cf. **Hayes***, 171 F.3d at 394 (finding that the third element of the plain error test was met even when the district court "did not read the [victim] letters into the record or even have them in the courtroom during the sentencing hearing").

4.

Finally, when the first three elements of the plain error test are satisfied, this court, in its discretion, may grant relief when the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." ***Keller***, 413 F.3d at 710, *quoting **Johnson***, 520 U.S. at 467. Here, the district judge cited personal knowledge, not disclosed in advance to the defendant, when imposing sentence. As this raises serious concerns about fairness, this court concludes that, under the facts and circumstances here, the fourth element of the plain error test is satisfied.

V.

The judgment is vacated, and the case remanded for resentencing before a different district judge. **28 U.S.C. § 2106**.

_____