# United States Court of Appeals
### For the Eighth Circuit

_____

No. 24-1748

_____

United States of America

*Plaintiff - Appellee*

v.

Robert Cottier

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Western

_____

Submitted: December 20, 2024
Filed: July 14, 2025

_____

Before LOKEN, ERICKSON, and KOBES, Circuit Judges.

_____

LOKEN, Circuit Judge.

On February 18, 2023, Robert Cottier was driving his white Buick sedan with his license suspended. He was traveling north in South Dakota on BIA Highway 27 at seven to fifteen miles per hour over the speed limit, with his blood alcohol concentration between .128% and .198% after a long day of drinking. His best friend Harold Long Soldier was the front seat passenger; Cottier's brother Alvin was in the back. Cheryl Cross was driving her Chevy Tahoe south on Highway 27 with her

fourteen-year-old niece in the front passenger seat and her twin babies and eight-year-old daughter in the back. As the vehicles approached each other, Cottier crossed into the southbound lane, colliding head-on with Cross' vehicle.

Everyone in the Cross vehicle survived but suffered serious injuries. Cross fractured her spine, her niece cut her lip, one of the twin babies sustained a subdural hematoma and the other a fractured left femur, and Cross' eight-year-old daughter was ejected from the car, suffering blunt head trauma and scalp and facial lacerations. In Cottier's vehicle, Long Soldier died due to blunt trauma injuries; Cottier suffered serious injuries but survived the accident.

Cottier was charged with major crimes in Indian country: involuntary manslaughter in violation of 18 U.S.C. §§ 1112 and 1153 (Count 1), and four counts of assault resulting in serious bodily injury in violation of 18 U.S.C. §§ 113(a)(6) and 1153 (Counts 2-5). Cottier pleaded guilty to Counts 1 and 5. In the written plea agreement, the government promised to "recommend that the Court impose sentences within the applicable Guideline range on each count and . . . that the sentences run consecutively." Varying upwards, the district court[1] sentenced Cottier to 96 months imprisonment. He appeals, arguing for the first time that the government breached the plea agreement when it recommended a 73-month sentence in a pre-sentence Sentencing Memorandum. Reviewing for plain error, we conclude there was no breach and therefore affirm.

## I. Procedural History

As relevant to the issue on appeal, the written plea agreement provided:

---

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

The Defendant and the United States understand and agree that the Court will determine the applicable Guideline range after reviewing the presentence report and considering any evidence or arguments submitted at the sentencing hearing. The United States agrees that it will recommend that the Court impose sentences within the applicable Guideline range on each count and will further recommend that the sentences run consecutively. The Defendant understands that any recommendation made by him or the United States is not binding on the court. . . .

The United States reserves the right to present evidence and argument as to what it believes the applicable Guideline range should be and to respond to any request for a sentence below the applicable Guideline range. For the purposes of this agreement, the "applicable Guideline range" is the range found by the Court by reference to the Sentencing Table at U.S.S.G. § 5A . . . before adjustments, if any, are made based on a downward departure, an 18 U.S.C. § 3553(e) sentencing factor, or other variance.[2]

Five weeks prior to the scheduled March 29, 2024 sentencing hearing, the Probation/Pretrial Services Officer filed a Presentence Investigation Report (PSR) that calculated Cottier's adjusted offense level as 24, using the multiple count adjustment in USSG § 3D1.4, minus a 3-level reduction for acceptance of responsibility, resulting in a total offense level of 21 and an advisory guidelines sentencing range of 37-46 months imprisonment because Cottier is in criminal history category I. Neither party filed objections to the PSR.

On March 21, the government filed a sealed Sentencing Memorandum. Treating the two counts separately, the government stated that the total offense level for Count 1 is 21, resulting in a guidelines range of 37-46 months, and the total

---

[2]The plea agreement contained an appeal waiver but the waiver "does not prevent us from reviewing [Cottier's] claim that the plea agreement was breached." United States v. Beston, 43 F.4th 867, 873 (8th Cir. 2022) (quotation omitted).

offense level for Count 5 with the acceptance of responsibility reductions is 17, resulting in a guidelines range of 21-27 months. Consistent with the plea agreement recital that the government would recommend consecutive sentences within the applicable Guideline range on each count, the Sentencing Memorandum stated: "the United States calculates consecutive sentences would make [Cottier] eligible for a sentence of up to 73 months. This is the appropriate sentence." The Memorandum made no reference to the PSR and its calculation of a combined guidelines range of 37-46 months for both counts.

At the sentencing hearing, the district court summarized the PSR's sentencing recommendations, noted that the government Sentencing Memorandum is "seeking consecutive sentences," and asked defense counsel to comment. Counsel replied:

> I'd like to start with the Government's sentencing memorandum. . . . It is accurate that in the plea agreement they reserve the right to request consecutive sentences. . . . My position with regard to the plea agreement is that prior to grouping these offenses [] the manslaughter count . . . would result in a final offense level of 19. With regard to the assault, the base is 19, with a three-level reduction for acceptance would be 16. So separating the two, I found a guideline range of 30 to 37 months on the manslaughter count and the range of 21 to 27 months on the assault count. And adding those together would -- would result in a range of 51 to 64 months. So it's my position that if the Government requested more than 64 months, they would be violating the plea agreement. I -- I don't know if the Government agrees with that.

Government counsel responded:

> I'm requesting . . . consecutive sentences at the top of the guideline range on each count. So if the [court's] calculation comes out to 64 months, then that's the United States' request. But I think it's important . . . that consecutive sentences at the top of the guideline range on each count are appropriate.

-4-

Defense counsel did not object or state that the government's position violated or was violating the plea agreement.

The district court then heard extensive remarks by Cottier, supporting statements by two members of Cottier's extended family, and lengthy victim impact statements by Cross and her husband. See Fed. R. Crim. P. 32(i)(4). Addressing Cottier directly, the district court summarized Cottier's long history of illegally driving while intoxicated -- five prior DUI convictions -- before pronouncing the sentence it would impose:

> The government has recommended that the sentences on the two offenses . . . you were convicted of run consecutive to each other. I'm going to upward vary to a sentence of 96 months in custody. And the reason that I'm doing that is that the top of the guideline range for the death of your best friend is 37 months in custody. There were five people in the other vehicle who were all injured. And I think that one year for each of them is what the punishment should be. I have to go one month below that because the statutory maximum on count 1 is eight years which takes you to 96 months in custody. . . . Your sentence would be much higher if others had died. They didn't. But the people in that other vehicle all have to live with their injuries every day for the rest of their life. And I think all of them should be recognized in the sentence that's imposed. And that's why I'm doing an upward variance.

The court's written Statement of Reasons listed a total offense level of 21, an advisory guidelines range of 37-46 months, and an upward variance that was not based on a plea agreement or motion by the parties because of the nature of the offense; victim impact; the history and characteristics of the defendant; and to reflect the seriousness of the offense, promote respect for the law, and provide just punishment. Defense counsel objected to the variance and timely appealed the sentence.

## II. Discussion

Cottier's appeal brief presents a single issue for our review: "Because the government breached the plea agreement by asking the court to sentence Cottier to 73 months in prison, this matter should be remanded for resentencing before a different judge." The brief then argues that "[t]he government breached the plea agreement when it filed a sentencing memorandum that asked the district court to sentence Cottier to an above-guideline 73-month prison sentence." This issue is raised for the first time on appeal.

This is an unusual (if not unprecedented) claim of plea agreement breach. At sentencing, Cottier's position was "that if the Government requested more than 64 months, they would be violating the plea agreement." The government responded that its position was that "if the [court's] calculation comes out to 64 months, then that's the United States' request." The court then heard further argument and testimony before imposing a 96-month sentence. The court orally explained why it varied upwards to 96 months -- the top of the guideline range for Count 1 is 37 months, the court added one year for each of the five people who were terribly injured in Cross' car, and capped the sentence at the statutory maximum for Count 1. The court found the guidelines range is 37-46 months, as the PSR recommended using the combined offense level in USSG § 3D1.4. Thus, the court did not determine the guidelines range for Count 5, which has a lower offense level.

In the plea agreement, the government agreed to "recommend that the Court impose [consecutive] sentences within the applicable Guideline range on each count." The agreement defined "applicable Guideline range" as "the range found by the Court by reference to the [Guidelines] Sentencing Table." At the sentencing hearing, the government urged consecutive sentences at the top of the guidelines range for each count. Cottier argued that would be 64 months and any request for a greater sentence would breach the plea agreement. The government responded, "if the [court's]

calculation comes out to 64 months, then that's the United States' request." So where is the breach? It's in the Sentencing Memorandum, Cottier argues.

Cottier cites no authority -- and we suspect there is none -- for the proposition that a request or position taken in a sentencing memorandum filed before the sentencing hearing *that is not adopted by the government as its position at sentencing* can be the basis for a claimed breach of a plea agreement promise to recommend a particular sentence. A promise to recommend a particular sentence is fulfilled -- or breached -- at the sentencing hearing, when the court determines what sentence it will impose. Cf. United States v. Helper, 7 F.4th 706, 710-12 (8th Cir. 2021). And when the defendant fails to assert this type of breach in the district court, our review is for plain error. Id. at 710. As the Supreme Court explained in Puckett v. United States, "*some* breaches may be curable upon timely objection -- for example, where the prosecution simply forgot its commitment and is willing to adhere to the agreement." 556 U.S. 129, 140 (2009).

At sentencing, the government did exactly what it had promised in the plea agreement. Having advised the court in its Sentencing Memorandum "what it believed" the applicable guidelines range on each count was, it vigorously argued for consecutive sentences within the "applicable Guideline range" *as found by the Court for each count*. Cottier argues that the plea agreement was breached because the 73-month sentence requested in the Sentencing Memorandum was greater than the maximum guidelines range for each count sentenced consecutively -- adding 30-37 months for Count 1 and 21-27 months for Count 5 produces a maximum consecutive sentence of 64 months imprisonment. But the plea agreement did not require the government to accurately predict in a sentencing memorandum the guidelines range the court would ultimately determine. The government in preparing the Sentencing Memorandum may have miscalculated the cumulative maximum sentence in requesting a sentence of 73 rather than 64 months. But as the Seventh Circuit noted in United States v. Diaz-Jimenez, "It's true . . . that a bell cannot be unrung. But a

mistake is not a bell, and usually can be corrected." 622 F.3d 692, 696 (7th Cir. 2010). And the appropriate time to correct this type of mistake is at the sentencing hearing, before the sentence is imposed, as the government did in this case.

We conclude the government honored the sentencing promise it made in the plea agreement. And even assuming the government's Sentencing Memorandum was a breach of the plea agreement that could not be corrected, the sentencing record leaves no doubt that the district court would have imposed the same sentence, even if the government had instead requested a 46-month sentence, the top of the PSR's recommended range. The court made "crystal clear at sentencing" that it decided to impose a 96-month sentence for reasons totally unrelated to the government's Sentencing Memorandum. Helper, 7 F.4th at 711. Thus, there was no error, much less plain error, in filing a Sentencing Memorandum that was not adopted as the government's final position at the sentencing hearing.

The judgment of the district court is affirmed.

_____